Filed 6/30/21  P. v. Evans CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>MARQUES TERREL EVANS,<br><br>     Defendant and Appellant. | B302308<br><br>(Los Angeles County<br>Super. Ct. No. TA144389) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Allen J. Webster, Jr., Judge.  Affirmed in part, reversed in part, and remanded.

Brad Kaiserman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, and Yun K. Lee, Deputy Attorney General, for Plaintiff and Respondent.

A jury convicted Marques Terrel Evans (defendant) of numerous sexual-assault-related offenses and making criminal threats. Charges leading to four of the convictions, which ultimately had no impact on his aggregate prison sentence, were added during trial with the permission of the trial court. With respect to the jury's verdicts, we are principally asked to decide whether the trial court erred in permitting the additional charges and whether substantial evidence supports an assault with a firearm conviction and true findings on great bodily injury enhancements imposed in connection with forced oral copulation convictions. As to the aggregate 155 years to life prison sentence imposed, defendant argues the trial court made various errors and the Attorney General in many respects agrees. We will affirm the convictions and remand for resentencing.

## I. BACKGROUND

### A. *The Crimes as Established by the Evidence at Trial*

#### 1. *July 2017: Abigail S.*

At approximately 10:23 p.m. on July 13, 2017, Abigail S. (Abigail) parked her car in front of defendant's house. Abigail had met defendant several months earlier, exchanged phone numbers, and began a telephone relationship with defendant that was both friendly and flirtatious. When Abigail let defendant know that she would be visiting her parents who lived near defendant's home, they arranged to meet.

As Abigail approached the house, defendant appeared and invited her into his partially furnished garage. After defendant closed the garage door, they talked and eventually had consensual sex, both oral and vaginal.

Defendant then took Abigail's clothes, purse, car keys, and phone and placed them out of her reach. Defendant repeatedly asked Abigail if she "wanted to do a line" of what appeared to be cocaine, and when she refused, he became "angry and upset." Abigail told defendant she wanted to go home, but he refused to return her clothes and effects—telling her she could not go until she performed more oral sex and he was "finished."

Over the course of the next several hours, defendant repeatedly forced Abigail to engage in vaginal and oral sex against her will. Once defendant ejaculated, he returned her clothes and possessions and let her leave.

As Abigail was driving home, defendant called her and texted her, but she did not respond. Once she got home, she texted him once, telling him that he had "traumatized" her. After sending him that one text, Abigail never responded to any of his subsequent texts, including one in which he apologized to her.

### 2. October 2017: Frank V. and Ariel R.
#### a. Frank V.

In the early hours of October 1, 2017, Frank V. (Frank) parked his car near defendant's house. At the time, Frank worked as a driver/bodyguard for Angel Entertainment, an agency which provided exotic dancers and masseuses to clients for private "shows." Frank's job required him to pick up a dancer/masseuse, drive her to the client's address, wait for her inside his car, and then drive her home or to another show. Throughout the show, Frank would remain in constant contact with the performer through text messages.

On the evening of October 1, Frank was driving and providing security for Ariel R. (Ariel), a woman he had worked

3

with on several prior occasions. Frank watched Ariel enter defendant's home through the garage and waited for Ariel's first confirming text that all was well. When that text never arrived, Frank tried texting Ariel. Eventually, Frank received a one-word text from Ariel that said "Paid." Frank remained concerned, however, due to the length of time that had elapsed since Ariel entered defendant's garage. Over the course of the next twenty minutes, Frank sent several more texts to Ariel, including one asking her to send him a photograph of herself confirming she was "okay." After not receiving a response from Ariel and after hearing a woman's scream, Frank left his vehicle and approached defendant's home.

Frank knocked on the garage door, but when there was no reply, he knocked repeatedly on the house's front door. Answering the door, defendant told Frank he had the wrong house because "there was no girl [ ]here." Frank insisted he had the right house because he saw Ariel walk into the garage. In response, defendant advanced on Frank, who backed up. As Frank retreated back toward the street while still maintaining he was at the right house, defendant raised a pistol he was holding, pointed the weapon at Frank, and told him he "better leave" before defendant shot him. Frank, who previously served in the United States Marine Corps and was familiar with weapons, believed the pistol was not a replica but a real firearm, possibly a Glock model. Frank believed that if he stayed, he could be shot and, as a result, he returned to his car and drove away.[1]

---

[1] As we will later discuss when confronting defendant's argument that the trial court wrongly permitted the prosecution, mid-trial, to add a charge of criminally threatening Frank, Frank also testified about his interaction with defendant during

4

Frank parked around the corner from defendant's house and called his employer and then 911, telling both he believed Ariel was being held against her will by an armed man. When later interviewed at the scene by Los Angeles County Deputy Sheriffs, Frank said defendant had told him he had better leave before defendant "popped off," a statement Frank interpreted to mean that defendant would shoot him if he did not leave. The deputy who questioned Frank at the scene subsequently testified Frank told him defendant "produced a firearm and pointed it at the lower portion of [Frank's body] and told him to leave."

### b. *Ariel R.*

Shortly after Ariel entered defendant's garage, he offered her what she believed to be cocaine. She declined and then explained that the price for an hour of erotic dance or massage was $200. In response, defendant told her, "you're going to take off your clothes and I'm going to have sex with you and I'm going

---

defendant's preliminary hearing. His testimony was generally consistent with his trial testimony. Frank testified he got out of his car when he heard a scream, eventually knocked on defendant's front door, and told defendant he needed "the girl" back. Frank further testified that defendant advanced on him (Frank) after telling him he had the wrong house and there was no girl there, that defendant was holding a handgun in his right hand, and that defendant started raising his hand with the gun while telling Frank he "better get out of there." Frank then got back in his vehicle, drove around the corner, and called 911. During the preliminary hearing, Frank did not testify defendant said he would shoot Frank, and when asked if defendant said anything about "being popped off," Frank said he could not remember.

5

to pay you afterwards." Ariel explained that she did not offer sexual services.

Defendant then grabbed a pistol, pointed the weapon at Ariel's face, and told her to take off her clothes. When Ariel refused to undress and asked to leave, defendant snatched her phone from her hand, causing her to yell out. In response, defendant struck Ariel with his gun, opening up a wound on her head that bled and caused her to scream.[2] As Ariel curled up in a fetal position on the couch, defendant beat her with his fists, before choking her until she passed out.

When Ariel regained consciousness, she found defendant had taped her mouth and hands. Defendant—still holding the gun—ordered her to strip; when she complied, defendant directed her to lie on a couch and then digitally penetrated her vagina and anus. Defendant then directed Ariel at gunpoint to kneel on the floor of the garage, where he repeatedly forced her to orally copulate him.

The forced oral sex was interrupted on several occasions as defendant got up from the couch to check a computer monitor that displayed a video feed from several external security cameras. After police began to arrive outside his home, defendant "started panicking" and "really freaking out." Defendant dragged Ariel (still naked) from one room in his house to another.[3] In the bathroom, defendant forced Ariel into the

---

[2] At trial, the parties stipulated Ariel was the source of blood evidence found on the shirt and shorts defendant was wearing at the time of his arrest.

[3] At trial, the parties stipulated that Ariel was the source of blood evidence found in various rooms in defendant's house.

6

shower, told her not to move, and turned the water on. Later, after defendant left Ariel in a child's bedroom, she went to the window, spied a police officer, and tapped on the window, attracting the officer's attention. Shortly thereafter, defendant returned Ariel's clothes to her and allowed her to leave the house.

When Ariel walked out of the house, she was still bleeding from the top of her head and appeared "dazed." The paramedics treated Ariel for a head laceration and then transported her to the closest hospital, where she received two staples in her scalp.

Defendant was taken into custody shortly after Ariel left his house. He agreed to speak with the arresting officers and said he did not know why he was being arrested. Defendant claimed he did not know Ariel and did not know why she walked out of his home shortly before he did. After defendant was arrested, deputies conducted a protective sweep of the house looking for things in plain sight, such as defendant's pistol. During the sweep, the deputies did not locate defendant's gun.[4]

Two days after defendant assaulted Ariel, she went to a hospital to be tested for sexually transmitted diseases and to seek treatment for pain where defendant had digitally penetrated her. A sexual assault nurse examined Ariel and found (in addition to her head laceration and various bruises) injuries consistent with strangulation, forced oral copulation, and penetration of her

---

[4]     Approximately 24 hours later, deputies returned to the house to conduct a more thorough search of the premises pursuant to a search warrant. In performing their search, the deputies were aided by a K-9 unit trained to detect and locate gunpowder, ammunition, or explosives. No firearms or ammunition were discovered in or around defendant's home.

vagina and anus with a foreign object. Specifically, as to Ariel's mouth, the nurse observed broken capillaries on the roof of her mouth and at the back of her throat, as well as bruising on the inside of her left check. The nurse found the injuries to Ariel's mouth and genital area to be "significant," because they were still present days after the assault.

### B. The Addition of Charges During Trial

Outside the presence of the jury, and before the close of the prosecution's case-in-chief during trial, the prosecution informed the court and the defense that it was going to move to amend the information against defendant to add counts based on the testimony up to that point during trial. The trial court deferred taking up any such motion at that time.

Later, immediately after the prosecution rested its case-in-chief and before the defense completed its case,[5] the prosecution made a motion to add charges that would become counts 19-22 of the amended information, i.e., charges for assault with intent to commit a felony (as to Ariel), battery with serious bodily injury

---

[5] The trial court permitted the defense to call five witnesses out of order during the prosecution's case: a former Los Angeles County Sheriff's deputy who interviewed Ariel and defendant, a Los Angeles County firefighter who was present when Ariel was interviewed at the scene, another firefighter who treated Ariel at the scene, an emergency room triage nurse, and the emergency room physician who treated Ariel. When it came time for the defense case after the trial court permitted adding the aforementioned four charges, the defense offered a stipulation in evidence but otherwise rested without presenting any additional testimony or exhibits.

(Ariel), criminal threats against Frank, and false imprisonment of a hostage (Ariel).[6]

The defense objected to the proposed additional charges, arguing it would have no opportunity to make a section 995 motion to dismiss the charges before the case went to the jury.[7] The prosecution countered there was no basis to dismiss the new charges because they were based not on new information but rather information that had been in the defense's possession for "quite some time." The defense did not contest that assertion or request a continuance in light of the proposed new charges. The trial court, citing appellate authority and Penal Code section 1009,[8] granted the prosecution's request to amend the

---

[6]     The false imprisonment of a hostage count was previously charged as count ten of the information but later withdrawn, possibly in error, by the prosecution. The prosecution proposed to add it back in as count 22. In addition to asking to add charges, the prosecution also moved to dismiss count 13 (charging a second instance of sexual penetration by a foreign object) because it was not supported by the evidence. The trial court granted the motion.

[7]     After the court made its ruling, the defense added a perfunctory "Sixth Amendment objection" with no further elaboration. The court overruled that objection as well.

[8]     Penal Code section 1009 (undesignated statutory references that follow are to the Penal Code) provides, in relevant part: "The court in which an action is pending may order or permit an amendment of an indictment, accusation or information . . . for any defect or insufficiency, at any stage of the proceedings . . . . The defendant shall be required to plead to such amendment or amended pleading forthwith, or, at the time fixed for pleading, if the defendant has not yet pleaded and the trial or

information to add the four charges and found the amendments "were covered in the evidence in the presentation of the case" and the defense had not "been substantially prejudiced by these particular amendments."

Thus, as finally amended, the charges presented to the jury for decision were: count 1, assault with a firearm on Ariel (§ 245, subd. (a)(2)); count 2, assault with a firearm on Frank (§ 245, subd. (a)(2)); count 3, false imprisonment by violence of Ariel (§ 236); counts 6 and 11, forcible oral copulation as to Ariel (former § 288a, subd. (c)(2)(A)); count 7, sexual penetration by foreign object of Ariel (§ 289, subd. (a)(1)(A)); count 9, criminal threats against Ariel (§ 422, subd. (a)); count 14, forcible rape of Abigail (§ 261, subd. (a)(2)); count 15, forcible oral copulation of Abigail (former § 288a, subd. (c)(2)(A)); count 16, misdemeanor false imprisonment of Abigail (§ 236); count 19, assault with intent to commit a felony against Ariel (§ 289) (§ 220, subd. (a)(1); count 20, battery of Ariel with serious bodily injury (§ 243, subd. (d)); count 21, criminal threats against Frank (§ 422, subd. (a)); and count 22, false imprisonment of a hostage (Ariel) (§ 210.5).

As to the criminal threats and certain of the assault and false imprisonment charges pertaining to Ariel (counts 3, 9, 19, 21 and 22), the information against defendant alleged he

---

other proceeding shall continue as if the pleading had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable postponement, not longer than the ends of justice require, may be granted. An indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination."

personally used a firearm within the meaning of section 12022.5, subdivision (a).  As to the forcible oral copulation and sexual penetration charges (counts 6, 7, and 11), the information alleged defendant used a handgun within the meaning of section 12022.53, subdivision (b).  As to these same three offenses, the information further alleged defendant personally inflicted great bodily harm within the meaning of section 667.61, subdivisions (a) and (d), and (1) personally used a firearm, (2) engaged in tying and binding of a victim (Ariel), and (3) committed the offense against more than one victim, all within the meaning of section 667.61, subdivisions (a) and (e).[9]  Finally, as to the forced oral copulation, sexual penetration, and rape counts (counts 6, 7, 14, and 15) the information alleged defendant committed those offenses against more than one victim within the meaning of section 667.61, subdivisions (b) and (e).

The jury found defendant guilty of all charges and found true all of the sentencing enhancement allegations.

### C.    Sentencing

On November 6, 2019, the trial court sentenced defendant to an aggregate term of 155 years to life.  We describe how the trial court arrived at that result (which, as we have already said, is erroneous in some respects).

On the count 6 forced oral copulation conviction, which the trial court designated as the principal term, the court sentenced

---

[9]    As we will discuss, section 667.61, often called the "one-strike law," provides for alternative, increased penalties for certain sex offenses where aggravating factors described in the statute are proven.

11

defendant to 43 years to life: eight years for the offense, plus ten years for the firearm enhancement, plus an additional 25 years to life for the section 667.61 findings.  In addition, the court imposed concurrent terms of 25 years to life and 15 years to life for the section 667.61 great bodily harm and multiple victim findings. The court then imposed the following prison terms to run concurrent with the 43 years to life sentence on count 6— including sentences for convictions on all four of the charges added during trial: three years on count 1, three years on count 2, two years on count 3, two years on count 9, one year on count 16, six years on count 19, three years on count 20, two years on count 21, and eight years on count 22.

On counts 7 and 11 (sexual penetration and forced oral copulation as to Ariel), the trial court sentenced defendant to 33 years to life: eight years for each offense plus 25 years to life for the section 667.61 findings.  The sentences on both counts were ordered to run consecutive to the sentence for count 6.  On counts 7 and 11, the court additionally ordered defendant to serve concurrent terms of 25 years to life for the great bodily harm section 667.61 finding, 15 years to life for the multiple victim section 667.61 finding, and 10 years to life for the firearm enhancement (§ 12022.53, subd. (b)).  As to count 7, the court, pursuant to section 654, imposed but stayed a three-year term for great bodily injury (§12022.7, subd. (a)).

On counts 14 and 15 (rape and forced oral copulation as to Abigail), the trial court sentenced defendant to 23 years to life (eight years for each offense, plus 15 years to life for the section 667.61 finding on each offense.  The sentences for both counts were to run consecutive to the sentence imposed on count 6.

The trial court also ordered defendant to pay a restitution fine and court assessments. As to the financial obligations, the court recognized its calculations might be mistaken.

## II. DISCUSSION

Defendant's arguments regarding trial court error at sentencing are well-taken in several respects, but we reject his attack on his convictions and aspects of the jury's sentencing enhancement findings.

The trial court did not abuse its discretion when permitting the prosecution to allege four additional charges to conform to the evidence as presented during the prosecution's case at trial.[10] Each of the counts the court gave the prosecution permission to add was supported by evidence presented at the preliminary hearing and there is nothing suggesting defendant suffered any significant prejudice from the addition of counts during trial—which never triggered a request for a continuance from the defense and came at a time when the defense was still entitled to present evidence. Next, there is substantial circumstantial evidence defendant's gun was a loaded, operable firearm, the only basis on which defendant contends there is insufficient evidence supporting his conviction for assault with a firearm (count 2). As to the great bodily injury allegations for forced oral copulation

---

[10] We reject defendant's assertion that de novo review arguably applies. Abuse of discretion is the applicable standard of review. (See, e.g., *People v. Birks* (1998) 19 Cal.4th 108, 129; *People v. Hamernik* (2016) 1 Cal.App.5th 412, 424; *People v. Arevalo-Iraheta* (2011) 193 Cal.App.4th 1574, 1581; *People v. Bolden* (1996) 44 Cal.App.4th 707, 716.)

13

there is substantial evidence that Ariel suffered two different injuries at two different times—again, the only point defendant raises (there is no argument that the injuries were too minor to constitute great bodily injury).  Finally, defendant's argument that the prosecutor misstated the law during closing argument is forfeited and trial counsel cannot be faulted for not making a meritless objection.

Defendant's sentencing, however, is a different story. Although the trial court did not err when deciding against staying punishment pursuant to section 654, the trial court did repeatedly misapply section 667.61—treating the law not as an alternative sentencing scheme, which it is, but as a law requiring enhancement of an otherwise applicable base term.  That error alone requires a full resentencing, and we therefore need not discuss the various other sentencing errors defendant raises.  We will make some brief, general comments to guide the parties and the trial court at resentencing, however.

> A.  *The Trial Court Did Not Err in Permitting the Prosecution to Add Four Charges During Trial*

As we noted when reproducing section 1009 in the margin earlier, an accusatory pleading can be amended with leave of court "at any stage of the proceedings" so long as the amendment does not "charge an offense not shown by the evidence taken at the preliminary examination."  (§ 1009; *People v. Goolsby* (2015) 62 Cal.4th 360, 367; see also *People v. Jones* (1990) 51 Cal.3d 294, 317 ["[A]t a minimum, a defendant must be prepared to defend against all offenses of the kind alleged in the information as are shown by evidence at the preliminary hearing to have occurred within the timeframe pleaded in the information"] (*Jones*);

14

*Hoffman v. Superior Court* (2017) 16 Cal.App.5th 1086, 1092 [the preliminary hearing is "'the touchstone of due process notice to a defendant'"].) If there is no prejudice to the defendant, "an amendment may be granted 'up to and including the close of trial.' [Citations.]" (*People v. Goolsby*, *supra*, at 368.)

Three of the counts the prosecution was permitted to add concerned Ariel: count 19 (assault with intent to commit a felony), count 20 (battery with serious bodily injury), and count 22 (false imprisonment of a hostage). There was evidence (Ariel's testimony) at the preliminary hearing of all three of those charges. She testified that prior to being digitally penetrated and being forced to perform oral sex, defendant conveyed an intent and an ability to use force by striking her with a gun (which caused a bleeding head laceration that later had to be closed by medical personnel with staples), by hitting her with his fists, by choking her until she lost consciousness, and by threatening to shoot her. Ariel also testified defendant held her in his house and dragged her to different rooms when the police arrived and defendant knew he may be facing an imminent risk of arrest.

The remaining count added by amendment, count 21, alleged defendant criminally threatened Frank in violation of section 422. That statute requires a defendant to make a threatening statement "verbally, in writing, or by means of electronic communication device." (§ 422, subd. (a).) Our Supreme Court has held that a threat made solely through nonaudible behavior falls outside the scope of section 422. (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1147-1148 [the defendant made a gang sign and a gun-to-the-sky gesture, but this did not constitute a verbal communication merely because he intended to convey an idea through his conduct] (*Gonzalez*).) But

15

assessment of whether a statement qualifies as a criminal threat considers "all the surrounding circumstances and not just the words alone" (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340; accord, *People v. Butler* (2000) 85 Cal.App.4th 745, 753), and courts have repeatedly upheld criminal threats convictions under section 422 by relying on an assessment of a defendant's verbal and nonverbal conduct taken together. (See, e.g., *People v. Franz* (2001) 88 Cal.App.4th 1426, 1446 [a "shushing" noise combined with a throat slashing gesture "constitute[d] substantial evidence of a verbal 'statement' . . . [threatening] to kill if the victim talked to the police"]; *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1218, 1220 [defendant's statements to victim, including "I'm going to get you," and "I'll get you," were sufficient to convey a threat where defendant also approached the victim "quickly, . . . yelled and cursed at him, . . . got within very close proximity to his face, and . . . displayed very angry behavior"]; see also *Gonzalez*, *supra*, at 1149 (conc. opn. of Werdegar, J.) ["nothing in the court's opinion prevents the People from arguing in a future case, should the facts support the argument and the People choose to make it, that conduct actually intended and understood to convey verbal information violates section 422"].)

Here, the threatening behavior as described by Frank at the preliminary hearing was not confined to defendant's nonverbal conduct of advancing on Frank as he retreated and raised his handgun at Frank. Defendant also spoke to Frank, telling him repeatedly he was at the wrong house, and rather ominously warning Frank he "better" leave as defendant was starting to raise his handgun in Frank's direction. That testimony was sufficient to show the basis for a criminal threats

charge (*Jones*, *supra*, 51 Cal.3d 294 at 317) and, under settled law, put defendant on notice of the possible need to defend against such a charge.

Defendant offers little other than legal platitudes in support of the argument that he was nevertheless somehow prejudiced by the mid-trial addition of these charges. He cannot complain about any sentencing impact, of course, as the added charges were less serious than others he was already facing and had no practical impact on his sentence—the terms for the added offenses were all ordered to run concurrently. Rather, defendant suggests he had no ability to rebut the charges at trial because, as he puts it, "the defense had presented their case[ ] and all that remained for the evidentiary portion of the trial was the prosecution's single rebuttal witness[ ] when the prosecution elected to add four new offenses." There are two problems with this.

First, the defense did not request a continuance, or an opportunity to reopen the presentation of evidence, in light of the proposed additional charges; without such a request, a post-verdict complaint about an inability to defend obviously rings hollow. Second, there is a reason the defense did not request to reopen the presentation of evidence: contrary to what defense counsel now implies, the trial court granted permission to add the charges *before* the defense case was complete. Defendant does not claim his examination of the witnesses he called out of order was in any way undercut by the later addition of charges, and if defendant wanted to mount some separate or additional defense at the time the trial court permitted amendment of the information, he was free to do just that.

17

There was no abuse of discretion in permitting the prosecution to allege the four additional charges during trial.

B.	*Substantial Evidence Supports Defendant's Assault with a Firearm Conviction and the True Findings on the Great Bodily Injury Allegations*

Defendant contests the sufficiency of the evidence at trial in two respects: one as to his conviction for assault with a firearm against Frank and two as to the jury's finding that he inflicted great bodily injury in connection with the forced oral copulation offenses against Ariel.  "In evaluating a claim regarding the sufficiency of the evidence, we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]  [¶] . . . [¶]  'The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence.'  [Citations.]  'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.'  [Citation.]  (*People v. Westerfield* (2019) 6 Cal.5th 632, 713-714.)

1.	*The assault with a firearm conviction*

Defendant argues "no evidence was presented that the firearm was loaded."  That overstates the matter.  There was circumstantial evidence defendant's gun was loaded and,

18

following long-established precedent, we hold the evidence was sufficient under the applicable standard of review. (See, e.g., *People v. Rodriguez* (1999) 20 Cal.4th 1, 13 (*Rodriguez*); accord, *People v. Penunuri* (2018) 5 Cal.5th 126, 147 ["the fact that the gun was loaded may be inferred from circumstantial evidence, and we will uphold an assault conviction if the inference is reasonable"].)

There was no direct evidence the gun used in the offense at issue in *People v. Montgomery* (1911) 15 Cal.App. 315 was loaded; indeed, the defendant testified it was not. (*Id.* at 317.) Yet the Court of Appeal held the jury was entitled to reject that testimony and find, based on the circumstances, the gun was loaded. (*Id.* at 317-319 [the defendant was enraged when he left a fight, returned with a gun he pointed at the victim, and declared, "'I have got you now,'" which the court thought would have been meaningless unless the weapon was loaded].) In another case, *People v. Mearse* (1949) 93 Cal.App.2d 834, the Court of Appeal rejected a sufficiency of evidence challenge to an assault conviction and held the defendant's command to the victim to halt or "I'll shoot" indicated the gun was then loaded. (*Id.* at 836-838 [explaining "[t]he acts and language used by an accused person while carrying a gun may constitute an admission by conduct that the gun is loaded"].) More recently, our Supreme Court in *Rodriguez* affirmed an assault with a firearm conviction where there was again no direct proof the gun was loaded but there was evidence the defendant displayed a gun to the victim, placed the barrel of the weapon just under the victim's chin, and told the victim to keep quiet because "I could do to you what I did to" the victim of a shooting on the previous day. (*Rodriguez*, *supra*, 20 Cal.4th at 6-7, 13 [holding a "defendant's own words

19

and conduct in the course of an offense may support a rational fact finder's determination that he used a loaded weapon" and reasoning "the jury could reasonably have interpreted the warning as an admission by defendant of his present ability to harm [the victim]"].)

Here, the evidence at trial established defendant flatly denied any knowledge of Ariel to Frank even though Frank saw Ariel enter defendant's garage and told defendant so. Defendant then advanced on Frank as the latter retreated toward the street, raised his Glock-type handgun toward Frank—which Frank believed based on his military service was not a replica but a real firearm—and told him he better leave before defendant shot him. That is good circumstantial evidence the jury could use to infer the weapon was loaded. Under the circumstances (Frank's knowledge that Ariel was inside defendant's home and not answering his texts in accordance with the agreed-upon safety procedures), defendant's threats against Frank would have been meaningless if the gun were not loaded.

### 2. *The great bodily injury enhancements*

In connection with its findings that defendant forced Ariel to orally copulate him (counts 6 and 11), the jury found true an allegation that defendant inflicted great bodily harm on Ariel. Defendant articulates his sole challenge to these true findings as follows: "The great bodily injury enhancement on both, or at least one, of the forced oral copulation convictions must be reversed as insufficient evidence was presented to establish which act of forcible oral copulation caused the great bodily injury or whether they both contributed to the great bodily injury." On this score, we believe the evidence is sufficient.

20

Ariel's testimony, the testimony of the sexual assault nurse, and medical records documenting the results of the nurse's examination established Ariel endured separate instances of forcible oral copulation causing her to suffer broken capillaries and bruising in different areas of the roof of her mouth, back of her throat, and inside her left cheek. From this evidence, the jury could reasonably have concluded the two charged acts of forced oral copulation caused different but equally significant injuries. Indeed, the jury was instructed they could do precisely that. On the great bodily injury allegation for counts 6 and 11, the jurors were instructed as follows: "The People have presented evidence of more than one injury constituting Great Bodily Injury. You must not find the defendant caused Great Bodily Injury unless you all agree on which injury constitutes Great Bodily Injury and that the defendant caused that injury. [¶] The injury can be different in different allegations, so long as you all agree on which injury he caused."[11] Defendant apparently speculates the jury may have concluded *both* charged acts of forced oral copulation contributed to *all* of Ariel's mouth injuries, but engaging in this sort of speculation is inconsistent with the governing standard of review.

The facts here are also unlike the scenario in *People v. Botello* (2010) 183 Cal.App.4th 1014, the only authority defendant cites in his opening brief in attacking the great bodily injury true findings. In that case, a witness could not say which defendant fired a rifle that was used to shoot the victim and a different division of this court held, as conceded by the Attorney

---

[11]     Defendant did not object to this instruction at trial and does not challenge its correctness on appeal.

21

General, the evidence was insufficient to support a finding the defendants personally discharged a firearm causing great bodily injury. (*Id*. at 1018, 1022.) Here, by contrast, there is no dispute about who caused Ariel's oral injuries or their severity and the Attorney General does not concede the evidence was insufficient to support the great bodily injury allegation for counts 6 and 11.

C.     *Defendant Has Not Shown His Trial Attorney Was Ineffective by Not Objecting to the Prosecution's Discussion of the Elements of Assault with a Firearm*

During closing argument, the prosecution explained the elements of assault with a firearm to the jury in the following manner: "So in order to prove that assault with a firearm—that the defendant assaulted [Frank] with a firearm, I have to prove that the defendant, he did an act with a firearm; by its virtue, it would directly and probably result in the application of force to a person; he did that act willfully—'willfully means on purpose'— he was aware of facts that would lead a reasonable person to realize his act, by its nature, would directly and probably result in the application of force; and he had the present ability to apply force with the firearm to a person. Okay. I have to prove to you these four things for [section] 245(a)(2). That's count 2." After reviewing the evidence regarding Frank's encounter with defendant and stressing that "an actual touching" by defendant on Frank's person was not required, the prosecution then argued: "The raising and pointing—right. Although [defendant] did not touch [Frank], [the raising and pointing] is enough for [section] 245(a)(2), assault with a firearm. If you raise and point a gun at somebody, that is enough. That is assault with a firearm." It is

this second, "raise and point" statement which defendant now argues was a misstatement of the law.

The defense raised no contemporaneous objection to this aspect of the prosecution's closing argument. The point is accordingly forfeited. (*People v. Williams* (2013) 56 Cal.4th 630, 671-672; see also *People v. Winbush* (2017) 2 Cal.5th 402, 482.) Defendant rather perfunctorily argues, however, that the absence of an objection constitutes ineffective assistance of counsel. Our discussion of the argument will be commensurate with the depth of defendant's presentation of it. Defense counsel may have appropriately refrained from objecting because, considered in its full context, the prosecution's argument did not misstate the law; the prosecution expressly informed the jury that there must be proof defendant had the present ability to apply force with the firearm to a person, which was obviously not possible if defendant's gun were not loaded. The existence of legitimate reasons for not objecting defeats an ineffective assistance of counsel claim on direct appeal. (*People v. Carter* (2005) 36 Cal.4th 1114, 1189; *People v. Young* (2005) 34 Cal.4th 1149, 1192 [courts will not "lightly infer" a jury would draw the most damaging meaning from statements during closing argument]; *People v. Bradley* (2012) 208 Cal.App.4th 64, 90 ["Failure to raise a meritless objection is not ineffective assistance of counsel"].)

*D.* *Substantial Evidence Supports the Trial Court's Decision Not to Stay Punishment on Certain Counts Pursuant to Section 654, but a Full Resentencing Is Still Required*

Section 654, in pertinent part, provides as follows: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a); see also *People v. Jones* (2012) 54 Cal.4th 350, 353 (*Jones*).) Our Supreme Court has held that when different charged crimes "were completed by a 'single physical act,'" section 654 bars punishment for more than one of the charged offenses. (*People v. Corpening* (2016) 2 Cal.5th 307, 311 (*Corpening*).) Prohibited double punishment is what defendant claims occurred here. He argues all three of counts 1 (assault with a firearm on Ariel), 3 (false imprisonment of Ariel by violence), and 19 (assault with intent to commit a felony on Ariel) "rely on the same act of [defendant] hitting Ariel on the head with a gun . . . ."[12] That, however, is not how we see the record.

The question is whether defendant hitting Ariel on the head "separately completes the actus reus for each of the relevant criminal offenses." (*Corpening*, *supra*, 2 Cal.5th at 313.) It does

---

[12] The prison terms for each of these three counts were ordered to run concurrent to the 43 years to life sentence on the count 6 forced oral copulation offense. Imposition of concurrent sentences, however, does not moot the section 654 question. (See generally *Jones*, *supra*, at 353, 360.)

24

not.  Defendant's false imprisonment of Ariel was accomplished by violence—by acts—apart from just hitting her on the head with his gun; the most significant of these was his strangulation of her into unconsciousness, but he also dragged her from room to room in the house.  As for assault with intent to commit a felony, much the same can be said.  Defendant hit Ariel on the head with the gun before forcing her to engage in sex acts, but he also choked her and hit her with his fists.  He also bound her hands with tape and threatened her at gunpoint.  In other words, there was a proper basis on which the trial court could find no single act completed the actus reus for each of the offenses in question.

Other aspects of the trial court's sentencing decisions are defective, however, as the Attorney General agrees.  Perhaps most significant is the trial court's error in applying section 667.61.

Section 667.61 is "an alternative sentencing scheme [that] applies only to certain felony sex offenses.  [Citation.]  It mandates an indeterminate sentence of 15 or 25 years to life in prison when the jury has convicted the defendant of a specified felony sex crime (§ 667.61 [listing applicable crimes]) and has also found certain factual allegations to be true (§ 667.61, subds. (d), (e))."  (*People v. Anderson* (2009) 47 Cal.4th 92, 102.) "Because the One Strike law constitutes a separate sentencing scheme for offenses within its scope, punishment for such offenses is not subject to other sentencing schemes, except where the One Strike law so provides."  (*People v. Rodriguez* (2012) 207 Cal.App.4th 204, 214.)  Thus, a One Strike sentence must be imposed as the principal term, not as an enhancement to the principal term.  (*People v. Acosta* (2002) 29 Cal.4th 105, 118 ["the One Strike law does not establish an enhancement, but 'sets forth

25

an alternative and harsher sentencing scheme for certain enumerated sex crimes'"]; *People v. Fuller* (2006) 135 Cal.App.4th 1336, 1343 ["the trial court erred in sentencing [defendant] under both the one strike and the determinate sentencing laws for each rape count because the former is an alternative, harsher sentencing scheme for those to whom it applies, not an enhancement under the latter"].)

Here, the trial court erred in precisely the same manner as described in *People v. Acosta*, *supra*, 29 Cal.4th 105 and *People v. Fuller*, *supra*, 135 Cal.App.4th 1336. The court imposed determinate terms on counts 6, 7, 11, 14, and 15 and tacked on indeterminate section 667.61 sentences as if that statute provides for a consecutive enhancement rather than an alternative sentencing scheme. That was error, and the Attorney General agrees this error alone requires a remand for a full resentencing. (See, e.g., *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances'"].)

We shall therefore vacate the sentence imposed with directions to resentence the defendant. In conducting the resentencing, the trial court should be mindful of the other concessions the Attorney General makes in this appeal concerning the propriety of the concurrent life sentences and gun use allegations on counts 6, 7, and 11 and the description of count 3 in the abstract of judgment. The trial court should also exercise renewed care in calculating and imposing criminal fines and assessments, including consideration of any objections the defense may make to those financial obligations.

DISPOSITION

Defendant's convictions are affirmed. The case is remanded for resentencing consistent with the views we have expressed in this opinion.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.


We concur:



MOOR, J.



KIM, J.

27